M. SMITH, Circuit Judge,
concurring in the judgment:
I agree with the per curiam opinion that California’s DNA collection law is clearly “constitutional as applied to anyone arrested for, or charged with, a felony offense by California state or local officials.” Accordingly, I also agree that the district court properly denied Plaintiffs-Appellants’ (Plaintiffs) motion for a preliminary injunction. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). I write separately, however, to make clear what the per curiam opinion regrettably leaves unsaid. California’s DNA collection law is materially indistinguishable from the Maryland law upheld in Maryland v. King, — U.S.-, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013), and Plaintiffs’ facial and as-applied challenges to California’s law therefore fail. Because the last paragraph of the per curiam opinion vaguely implies that something of Plaintiffs’ lawsuit may survive King, I respectfully concur only in the judgment.
I.
Because the per curiam opinion does not describe the relevant factual and procedural background of this case, I do so here.
A.
In 2004, California voters approved Proposition 69, which requires law enforcement to collect DNA samples from “any adult person arrested or charged with any felony offense ... immediately following arrest, or during the booking ... process or as soon as administratively practicable after arrest, but, in any ease, prior to release on bail or pending trial or any physical release from confinement or custody.” CaLPenal Code §§ 296(a)(2)(C), *1272 296.1(a)(1)(A). The law took effect on January 1, 2009. Officers typically collect the DNA sample from a buccal swab that is swept along an arrestee’s inner cheek. An arrestee’s failure to comply with the DNA collection is a misdemeanor. Id. § 298.1(a).
Once officers collect the DNA sample, it is sent to a state laboratory, which creates a DNA profile of the arrestee. The laboratory then uploads the DNA profile into the Combined DNA Index System (CO-DIS), a nationwide collection of federal, state, and local DNA profiles.
Only law enforcement officials may access a DNA profile, and they may only use the DNA for identification purposes. Id. §§ 295.1(a), 299.5(f). Unauthorized access or disclosure is punishable under state law by imprisonment and a criminal fine. Id. § 299.5(i). Federal law imposes similar penalties for unauthorized use of, or access to, CODIS. See 42 U.S.C. §§ 14133(c), 14135e(e). An arrestee who is not ultimately convicted may ask the trial court to order the sample destroyed and the DNA profile expunged. CaLPenal Code § 299(b).
B.
Plaintiffs in this case provided DNA samples in connection with their felony arrests, but they were never convicted of the crimes for which they were arrested. On October 7, 2009, Plaintiffs filed a complaint, on behalf of a putative class, asserting that California’s DNA collection law is unconstitutional, both facially and as applied. On October 30, 2009, Plaintiffs moved for a preliminary injunction barring the application of the law to persons arrested for, but not convicted of, a felony offense. The district court denied Plaintiffs’ motion for a preliminary injunction on December 23, 2009. Plaintiffs timely appealed.
II.
The Supreme Court’s decision in King is fatal to Plaintiffs’ claims. In King, the Court held that “[wjhen officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee’s DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.” 133 S.Ct. at 1980. The Court recognized that although other DNA-colleetion statutes “vary in their particulars, such as what charges require a DNA sample, their similarity means that this case implicates more than the specific Maryland law. At issue is a standard, expanding technology already in widespread use throughout the Nation.” Id. at 1968.
Despite the clarity of the Supreme Court’s holding, Plaintiffs argue that King does not apply to California’s DNA collection law. But the purported distinctions that Plaintiffs identify are illusory.
A.
Plaintiffs first argue that King is distinguishable because Maryland’s law applies only to burglaries, crimes of violence, and attempts at either, which the Supreme Court characterized as “serious crimes.” Id. at 1967. By contrast, California’s law applies to all felonies. See CaLPenal Code § 296(a)(2)(C). Plaintiffs contend that this difference is significant, as the California law applies to more minor crimes in which DNA evidence will rarely be relevant, including “wobblers” that can be charged as either a misdemeanor or a felony.
This argument has no traction. The Maryland law’s list of “serious crimes,” King, 133 S.Ct. at 1967, does not differ *1273 significantly from the California law’s limitation to adult felony arrestees. A felony is, of course, a serious crime. See Black’s Law Dictionary 694 (9th ed.2009) (defining felony as “[a] serious crime usu[ally] punishable by imprisonment for more than one year or by death”). Indeed, in outlining the scope of its decision, the Supreme Court explained that “[b]oth federal and state courts have reached differing conclusions as to whether the Fourth Amendment prohibits the collection and analysis of a DNA sample from persons arrested, but not yet convicted, on felony charges.” King, 133 S.Ct. at 1966 (emphasis added). The Court then stated that it “granted certiorari ... to address the question.” Id. When viewed against this broad language, Plaintiffs’ attempt to limit King in this way is baseless.
More fundamentally, the Court’s reasoning in King is not dependent on the seriousness of the crimes involved. In upholding Maryland’s law, the Supreme Court defined the state’s interest in obtaining DNA as “identifying [the arrestee] not only so that the proper name can be attached to his charges but also so that the criminal justice system can make informed decisions concerning pretrial custody.” King, 133 S.Ct. at 1980. Under the Court’s rationale, the magnitude of the state’s interest does not necessarily depend on the seriousness of the crime of arrest. As the majority observed, “people detained for minor offenses can turn out to be the most devious and dangerous criminals.” Id. at 1971 (quoting Florence v. Bd. of Chosen Freeholders, — U.S.-, 132 S.Ct. 1510, 1520, 182 L.Ed.2d 566 (2012)) (internal alteration omitted).
The four dissenting Justices in King similarly recognized that there is no basis for limiting the Court’s holding to certain enumerated crimes. Describing the breadth of the majority’s reasoning, Justice Scalia explained in dissent that “[i]f one believes that DNA will ‘identify’ someone arrested for assault, he must believe that it will ‘identify’ someone arrested for a traffic offense.” King, 133 S.Ct. at 1989 (Scalia, J., dissenting). Justice Scalia thus reasoned that “[a]s an entirely predictable consequence of today’s decision, your DNA can be taken and entered into a national DNA database if you are ever arrested, rightly or wrongly, and for whatever reason.” Id. He predicted that “[w]hen there comes before us the taking of DNA from an arrestee for a traffic violation, the Court will predictably (and quite rightly) say, “We can find no significant difference between this case and King.’ ” Id.
Thus, the California law’s limitation to felony arrests is not meaningfully different from the Maryland law’s restriction to certain “serious crimes.” In upholding the Maryland law, the Supreme Court identified the state’s interest as identifying the arrestee as part of the booking process. This state interest does not vary with the “seriousness” of the felony at issue. Accordingly, Plaintiffs’ first attempt to distinguish King fails.
B.
Plaintiffs next argue that California’s law is distinguishable from the Maryland law approved in King because (1) it authorizes the collection of DNA from arres-tees never charged with a crime; and (2) it allows police to analyze DNA samples without a judicial finding of probable cause. But, under King, these differences are not constitutionally relevant.
Unlike California, Maryland does not process DNA samples until after suspects are arraigned. See King, 133 S.Ct. at 1967. Nevertheless, the Supreme Court in King repeatedly emphasized the permissibility of DNA collection from arrestees at booking, holding that “DNA is, like finger *1274 printing and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.” Id. at 1980. Indeed, the Court expressly held that “[i]n light of the context of a valid arrest supported by probable cause [the arrestee’s] expectations of privacy were not offended by the minor intrusion of a brief swab of his cheeks.” Id. (emphasis added).
In light of the Supreme Court’s focus on the collection of DNA samples in connection with arrest and booking, Plaintiffs’ argument that the filing of charges and a judicial probable-cause determination are conditions precedent to permissible DNA collection is unsupportable. Refusing to draw such a line makes good sense. The government’s interest in identifying arres-tees attaches “when an individual is brought into custody,” id. at 1971, irrespective of whether the suspect is ultimately charged. For this reason, the Court explained that “[w]hen probable cause exists to remove an individual from the normal channels of society and hold him in legal custody, DNA identification plays a critical role in serving those interests.” Id. The dissent likewise recognized that the majority’s reasoning applies to all arrests, regardless of subsequent charging decisions. See id. at 1989 (Scalia, J., dissenting) (“As an entirely predictable consequence of today’s decision, your DNA can be taken and entered into a national DNA database if you are ever arrested, rightly or wrongly, and for whatever reason.” (emphasis added)). Plaintiffs’ arguments to the contrary are unavailing.
C.
Finally, Plaintiffs assert that California’s law is distinguishable from Maryland’s because California retains and uses DNA samples indefinitely even if a suspect is never charged or convicted. By contrast, Maryland automatically expunges the DNA samples of every person it fails to convict. See Md. Pub. Safe Code Ann. § 2-504(d)(2). While Plaintiffs are correct that expungement of DNA samples is not automatic under California law, this distinction is not constitutionally relevant.
Even though California does not automatically expunge DNA samples, California law enables an arrestee to request expungement if no charges are filed, his case is dismissed, or he is found not guilty. CaLPenal Code § 299(b). Plaintiffs counter that California will not, in practice, expunge DNA samples and profiles until after the relevant statute of limitations has expired. But Defendants-Appellees represent that the California Department of Justice interprets § 299 “to allow expungement as soon as the prosecuting attorney declines to press charges.” Appellees’ Supplemental Br. at 8 n.2. In view of this representation, there is strong reason to believe that the differences in expungement procedures between Maryland and California are not as great as Plaintiffs suggest.
In any event, the King Court did not view Maryland’s expungement procedures as important to the constitutionality of Maryland’s law. The Fourth Amendment search at issue is a buccal swab, and the “minor intrusion” that this “brief’ procedure represents is not affected at all by the availability of expungement procedures. King, 138 S.Ct. at 1980. While the Supreme Court also analyzed whether the processing of the arrestee’s DNA sample intruded on his privacy interests, it did not suggest that post-collection expungement procedures would affect the constitutional inquiry. See id. at 1979-80. And the dissent did not view the majority’s holding as so limited. See id. at 1989 (Scalia, J., dissenting) (“Perhaps the construction of such a genetic panopticon is wise.”).
*1275 III.
The majority in King expressly recognized that its decision “implicates more than the specific Maryland law,” id. at 1968, and the four dissenting Justices emphatically agreed. See id. at 1989 (Scalia, J., dissenting). After King, Plaintiffs’ facial and as-applied challenges to California’s DNA collection law are clearly without merit, and any amendment to Plaintiffs’ complaint would be futile. This ease is over, and the district court has no obligation to give the Plaintiffs an opportunity to amend their complaint. For the foregoing reasons, I respectfully concur only in the judgment.